UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 08-20128-CIV-HUCK/O'SULLIVAN

SASA PADURJAN, and all other similarly
situated,

      Plaintiff,

v.

AVENTURA LIMOUSINE & TRANSPORTATION
SERVICE, INC., a Florida corporation

      Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS MATTER came before the Court on the Plaintiff's Verified Motion for Attorneys' Fees and Incorporated Memorandum of Law (DE# 150, 1/28/09); the Plaintiff's Verified Motion to Tax Costs and Incorporated Memorandum of Law (DE# 149, 1/28/09); the Plaintiffs' Verified First Supplemental Motion for Attorney's Fees, Costs, and Litigation Expenses, and Incorporated Memorandum of Law (DE# 173, 6/22/09); and the Plaintiffs' Notice of Filing Attorney Fee Hours from June 22, 2009 to the Present (DE# 198, 10/9/09).  These matters were referred to United States Magistrate Judge John J. O'Sullivan by the Honorable Paul C. Huck, United States District Court Judge for the Southern District of Florida pursuant to 28 U.S.C. § 636(b). (DE# 146, 1/23/09).  Having reviewed the applicable filings and law, the undersigned respectfully **RECOMMENDS** that

1) the Plaintiff's Verified Motion for  Attorneys' Fees and Incorporated Memorandum of Law (DE# 150, 1/28/09) be **GRANTED in part and DENIED in part** in accordance with the following Report and Recommendation;

2) the Plaintiff's Verified Motion to Tax Costs and Incorporated Memorandum of Law (DE# 149, 1/28/09) be **GRANTED in part and DENIED in part** in accordance with the following Report and Recommendation; and

3) the Plaintiffs' Verified First Supplemental Motion for Attorney's Fees, Costs, and Litigation Expenses, and Incorporated Memorandum of Law (DE# 173, 6/22/09) be **GRANTED in part and DENIED in part** in accordance with the following Report and Recommendation.

## PROCEDURAL BACKGROUND

_____1.      On December 9, 2008, the parties settled this action for $20,000.  (DE# 142, 12/9/09).  The following day, this Court entered a Final Order of Dismissal based on the parties' settlement.  (DE# 141, 12/10/08).   The plaintiff's motion for costs and fees and related matters were referred to the undersigned by United States District Judge Huck.  (DE# 146, 1/23/09).

2.      On January 28, 2009, the plaintiff filed the Plaintiff's Verified Motion for Attorneys' Fees and Incorporated Memorandum of Law (DE# 150, 1/28/09); and the Plaintiff's Verified Motion to Tax Costs and Incorporated Memorandum of Law (DE# 149, 1/28/09).

3.      In support of his initial motion for attorneys' fees, the plaintiff filed the following affidavits: the Affidavit of Lloyd S. Glasser (DE# 150-1, 1/28/09); the Affidavit of Harry O. Boreth (DE# 150-2, 1/28/09); the Affidavit of Barry S. Feingold (DE# 150-3, 1/28/09); the Affidavit of Chris Kleppin  (DE# 150-4, 1/28/09); and the Sworn Declaration of Marc  Cooper, the plaintiff's fee expert  (DE# 150-23, 1/28/09).  In support of his motion for costs, the plaintiff filed the affidavit of Frank Carreras, the plaintiff's private process server.  (DE# 149-6, 1/28/09).

4.      On April 6, 2009, the defendant filed the Defendant's Response in Opposition to Plaintiff's Verified Motion for Attorney's Fees and Incorporated Memorandum of Law.  (DE# 163, 4/6/09).  In opposition to the  motion for attorneys' fees, the defendant filed the Affidavit of Robert S. Turk, the defendant's fee expert (DE# 163-2, 4/6/09) and two hearing transcripts (DE# 163-3,163-4, 4/6/09).

2

5.     The plaintiff filed separate replies in support of his motion for attorney's fees (DE# 169, 5/22/09) and his motion to tax costs (DE# 170, 5/22/09).

6.     On June 22, 2009, the plaintiff filed the Plaintiffs' Verified First Supplemental Motion for Attorney's Fees, Costs, and Litigation Expenses, and Incorporated Memorandum of Law (DE# 173, 6/22/09).  He also filed the supplemental declarations of Chris Kleppin (DE# 173-2, 6/22/09) and Marc Cooper (DE# 173-3, 6/22/09) as well as additional billing records.

7.     On August 17, 2009, the defendant's filed the Defendant's Response in Opposition to Plaintiff's Verified First Supplemental Motion for Attorney's Fees, Costs and Litigation Expenses, and Incorporated Memorandum of Law (DE# 182, 8/17/09).

8.     The plaintiff filed his reply on August 19, 2009.  (DE# 183, 8/19/09).

9.     The parties requested and the undersigned determined that an evidentiary hearing should be held.  All motions are ripe for adjudication.

10.     On September 24, 2009, the undersigned conducted an evidentiary hearing on the issue of attorneys' fees and costs.  Each side was allotted three hours to present evidence and argument. Chris Kleppin and Marc Cooper testified on behalf of the plaintiff.  Jason Coupal, Robert S. Turk, and David Rothstein testified on behalf of the defendant.  The following exhibits were admitted on behalf of the plaintiff: Plaintiff's Exhibit 1 is the Affidavit of Chris Kleppin; Plaintiff's Exhibit 2 is the Affidavit of Marc Cooper; Plaintiff's Exhibit 2-A is the Affidavit of Marc Cooper regarding the supplemental fee application; and Plaintiff's Exhibit 3 is the Affidavit of Sasa Padurjan before the motion for summary judgment.  The following exhibit was admitted on behalf of the defendant: the Affidavit of Robert S. Turk.

11.     After the evidentiary hearing, the plaintiff filed the Plaintiffs' Notice of Filing Attorney Fee Hours from June 22, 2009 to the Present (DE# 198, 10/9/09), in which the plaintiff seeks reimbursement for an additional $6,240 for 20.8 hours spent by

3

Mr. Kleppin between June 22, 2009, and October 9, 2009.  The plaintiff seeks fees in the total amount of $220,930, which includes the initial fee application, the first supplemental fee application, and the most recent notice of filing.

## ANALYSIS

### I. The Plaintiff Is Entitled to Reasonable Attorneys' Fees as the Prevailing Plaintiff in an FLSA Action.

The plaintiff argues that he is entitled to fees as the prevailing party in a case brought pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b).  The plaintiff settled his claims for $20,000.  On December 10, 2008, this Court entered a Final Order of Dismissal based on the parties' settlement.  In opposition, the defendant argues that the plaintiff continued the litigation needlessly, multiplied the proceedings vexatiously and that the hourly fee sought by the plaintiff's counsel is too high.  The defendant requests that the Court either deny the request for fees altogether or substantially reduce the fees to a more reasonable amount.  Resp. at p. 2 n.3.  (DE# 163, 4/6/09)

Title 29 U.S.C. § 216(b) of the Fair Labor Standards Act (hereinafter the "FLSA") provides for a prevailing plaintiff to be awarded a reasonable attorney's fee to be paid by the employer.  A fee award to a prevailing plaintiff under  29 U.S.C. § 216(b) of the FLSA is mandatory.  Christiansburg v. Garment Co. V. EEOC, 434 U.S.. 412, 415 n.5 (1978) (noting that sub-section 216(b)'s use of the word "shall" "make[s] the fee awards mandatory for prevailing plaintiffs" ); Shelton v. Ervin, 830 F.2d 182, 183-84 (11th Cir. 1987) (holding that attorney's fees and costs deemed fees are an "integral part of the merits of [a] case [in which § 216(b) applies"); Hagelthorn v. Kennecott Corp., 710 F.2d 76 (2d Cir. 1983).  For the purpose of awarding fees, a "prevailing party" is one who "prevailed in some significant issues in the litigation and [has] obtained some of the

relief sought." Texas State Teachers Ass'n v. Garland Indep. School District, 489 U.S. 782 (1989).

The defendant does not dispute that the plaintiff is the prevailing party in the case.  However, despite his prevailing party status, the defendant argues that the plaintiff's conduct in litigating the case warrants a substantial reduction of an award of attorneys' fees.  The defendant complains that "[the] Plaintiff's counsel engaged in unnecessary, wasteful and vexatious litigation conduct, including, but not limited to, taking numerous, extensive depositions of unnecessary witnesses; filing a Motion for Summary Judgment that was not well taken, and engaging in repetitive and overbroad discovery of information not even vaguely relevant to the disposition of this cause." Response at 2 (DE# 163, 4/6/09).  The defendant contends that the settlement of the plaintiff's claim in the amount of $20,000 was little more than what he would have received had he accepted any of the defendant's offers of judgment.  The defendant argues that "[a]s other divisions of the Court have found in similar cases, counsel prevented this matter from being resolved appropriately in order to obtain an unreasonably high award of fees, to the detriment of his client." Id.  The defendant asks the Court to reduce the plaintiff's fees significantly, if not entirely deny the plaintiff's fee motions.  Id.  At the evidentiary hearing, the defendant's counsel retracted the request that fees be denied outright.

## II.    Plaintiff's Verified Motion for Attorneys' Fees

The undersigned RECOMMENDS that the Plaintiff's Verified Motion for Attorneys' Fees and Incorporated Memorandum of Law (DE# 150, 1/28/09) be

**GRANTED in part** and that the plaintiff be awarded $92,940.00 for the initial fee request and $5,100.00 for the supplemental fee requests as set forth below.

    A.    <u>Reasonable Attorneys' Fees</u>

In his initial fee application, the plaintiff seeks fees in the amount of $184,900.00 for 611.1 hours of attorney time incurred through January 22, 2009, based on the following hourly rates, hours and fees[1]:

| Attorney | Hourly Rate Sought | Hours | Fees |
|---|---|---|---|
| Chris Kleppin (CK) | $300 | 561.8 | $168,540.00 |
| Lloyd S. Glasser (LSG) | $400 | 5.0 | $2,000.00 |
| Harry O. Boreth (HOB) | $400 | 10.7 | $4,280.00 |
| Barry Feingold (BF) | $300 (check numbers | 33.6 | $10,080.00 |
| Total | | 611.1 | $184,900.00 |

In his supplemental fee request filed on June 22, 2009, the plaintiff seeks the additional amount of $29,790 for Mr Kleppin's fees and the plaintiff's fee expert's fees incurred between January 23, 2009, and June 22, 2009.  After the evidentiary hearing, Mr. Kleppin further supplemented the plaintiff's fee application with the Plaintiffs' Notice of Filing Attorney Fee Hours from June 22, 2009 to the Present (DE# 198, 10/9/09).  This second supplement seeks an additional $6,240.00 for Mr. Kleppin's time (20.8 hours at

---

[1] Mr. Kleppin's initial fee request reflects a voluntary reduction of approximately 40 hours and downward adjustments of certain hourly rates to be consistent with the opinion of the plaintiff's fee expert, Marc Cooper, Esq.  Mot. at 15.  (DE# 150, 1/28/09). Mr. Kleppin voluntarily reduced the hourly rates of Messrs. Boreth and Glasser from $450 to $400. In the initial fee request, the plaintiff seeks a combined total of 595.4 hours for Messrs. Kleppin and Mr. Feingold, which is .7 hours ($210) less than the combined total of their hours.  To correct the discrepancy, Mr. Kleppin's hours in the chart have been decreased by .7 hours.

$300 per hour).  Thus, the total amount of attorney's fees that the plaintiff seeks is $220,930.  The supplemental fee requests are addressed separately below.

In calculating a reasonable attorney's fee award, the Court must consider the number of hours reasonably expended on the litigation, together with the customary fee charged in this community for similar legal services.  See Hensley v. Eckerhart, 461 U.S. 424 (1983); Loranger v. Stierheim, 10 F.3d 776 (11th Cir. 1994).  These two figures are then multiplied together, resulting in a sum commonly referred to as the "lodestar."  Under certain circumstances, the lodestar may be adjusted in order to reach a more appropriate attorney's fee.  Blum v. Stenson, 465 U.S. 886, 888 (1984).

Because the fees requested are voluminous, this Court is not required to engage in an hour-by-hour analysis.  Loranger v. Stierheim, 10 F.3d 776, 783 (11th Cir. 1994); Trujillo v. Banco Central del Ecuador, 229 F. Supp. 2d 1369, 1375 (S.D. Fla. 2002); cf. Norman, 836 F.2d at 1301.  "[I]t is sufficient for the court to provide a concise but clear explanation of its reasons for the reduction."  Loranger, 10 F.3d at 783.  The rule in Loranger differs from the rule articulated in Norman.  Trujillo, 229 F. Supp. 2d at 1375.  "The earlier decision in Norman requires the district court to specifically identify any disallowed, non-compensable hours, and to further explain why the hours are being disallowed."  Id. (citing Norman, 836 F. 2d at 1304).  In Trujillo, the district court explained

> [t]o perform this calculation a judge must necessarily examine and consider each of the attorney's fee entries, each objection to those entries, the responses and replies thereto, and then make a determination regarding the legitimacy of each entry explaining the Court's modification, if any.  However, in a complex, multi-million dollar litigation involving thousands of objections comprising hundreds of pages, undertaking such a task could only be described as a gargantuan waste of judicial

resources.
Id.

### 1.    Reasonable Hourly Rate

The Court must first evaluate respondents' requested fee in terms of the appropriate hourly rate.  In order to determine a reasonable and proper fee award, the Court must consider the number of hours expended on the case together with the customary hourly fees charged in this community for similar services.  See Norman v. Housing Authority of City of Montgomery, 836 F.2d 1292, 1299 (11th Cir. 1988).  The Supreme Court has held that a reasonable hourly rate is to be measured by "prevailing market rates in the relevant community."  Blum v. Stenson, 465 U.S. 886 (1984).

Generally, acceptable proof of the market rate may be comprised of testimony and direct evidence from other legal practitioners in the relevant legal community who are familiar with the type of legal service provided and the prevailing market rate for such work.  Norman, 836 F.2d at 1299. Furthermore, the Court may make a fee award based on its own experience where documentation and testimony is inadequate or the fees claimed seem expanded.  Norman, 836 F.2d at 1303 (citing Davis v. Board of School Commissioners of Mobile County, 526 F.2d 865, 868).   In determining the prevailing market rates the Court should consider several factors including "the attorneys' customary fee, the skill required to perform the legal services, the attorneys' experience, reputation and ability, the time constraints involved, preclusion from other employment, contingency, the undesirability of the case, the attorneys' relationship to the client, and awards in similar cases."  Mallory v. Harkness, 923 F. Supp. 1546, 1555 (S.D. Fla. 1996)(citing,  Dillard v. City of Elba, 863 F. Supp. 1550, 1552 (M.D. Ala.

8

1993)).

The plaintiff's counsel seeks to be reimbursed for his own work and that of Mr. Feingold at $300 per hour.  He also seeks to be reimbursed for the work of Messrs. Boreth and Glasser at a rate of $400 per hour.  In support of the plaintiff's counsel's own rates, Mr. Kleppin states that he has been practicing labor and employment law for 6 years, that he is highly skilled in his specialization and that his skills have been demonstrated by the relief he has attained for his client in this case.  Regarding the other attorneys for whom fees are sought, plaintiff's counsel further states that Mr. Glasser has been practicing for more than 30 years and that Mr. Boreth has been practicing for approximately 40 years.  Additionally, the plaintiff has filed the affidavit of attorney Marc Cooper, Esq., whose practice concentrated in federal and state appeals and trial support in various areas of the law for approximately thirty years before he retired in 2008.  (DE# 150-23, 1/28/09).  Admittedly, Mr. Cooper did not practice in the area of labor and employment law.   In support of his hourly rate, Mr. Kleppin supplemented his fee requests and filed copies of several recent decisions by other judges in this district who awarded him $300 per hour.  See (DE# 184,185, and 186, 9/22/09).

The defendant challenges the hourly rate of Mr. Kleppin and relies on the market rate of attorneys who practice labor and employment law in the Southern District of Florida as well as decisions of this Court wherein Mr. Kleppin was awarded hourly rates of $175.  The defendant also relies on the expert opinion of Mr. Robert S. Turk, Esq. Mr. Turk attests that in his experience, attorneys with between four and eight years of experience in labor and employment law have normally been awarded hourly rates

between $225 and $250 per hour and that others with comparable experience may charge less.  The defendant's expert opines that a downward adjustment of Mr. Kleppin's hourly rate to $175 is appropriate based on the manner in which Mr. Kleppin conducted this litigation and for the reasons that Judge Seitz awarded Mr. Kleppin the hourly rate of $175 in *Powell v. Carey International, Inc.* Turk Afd. at ¶ 63 (DE# 163-2, 4/6/09).  Mr. Turk further opines that the hourly rates of $400 for Messrs. Boreth and Glasser are also excessive and unreasonable.  Id. at ¶ 64.  It is Mr. Turk's opinion that the fees incurred by Messrs. Boreth and Mr. Glasser should not be compensated.

Having reviewed the filings and the applicable case law, the undersigned finds that the judgments reached by the Courts in the cases to which the plaintiff referred in his motion are useful evidence of the reasonableness of the fees claimed, as is the affidavit submitted by the plaintiff.  Duckworth v. Whisenant, 97 F.3d 1393, 1396 (11th Cir. 1996) (A fee movant may establish the reasonableness of rates by producing either direct evidence of rates charged under similar circumstances or opinion evidence of reasonable rates.).  Moreover, the undersigned is familiar with the rates charged in the Southern District of Florida.  Having considered and weighed the evidence, counsels' reputation and experience in the areas of the applicable law and the Court's familiarity with attorneys' fees in general, the undersigned finds that the hourly rate of $300 for Mr. Kleppin is reasonable.  The defendant's expert opines that neither Mr. Boreth nor Mr. Glasser's time should be compensated. The undersigned agrees with the defendant's expert that the time incurred by Mr. Boreth should not be compensated. However, the undersigned recommends that 2.5 hours of Mr. Glasser's time for attending mediation should be compensated at Mr. Kleppin's hourly rate.  For similar reasons, the

10

undersigned  recommends that Mr. Feingold's time should not be compensated, except for 5.0 hours for the deposition of Mr. Howard at Mr. Kleppin's hourly rate. Thus, the undersigned recommends an hourly rate of $300 for Mr. Kleppin, Mr. Feingold, and Mr. Glasser.

2.      Hours Reasonably Expended

A.      Fees Requested

_____The plaintiff claims that his primary counsel expended 561.8 hours over the course of the litigation through January 2009.  Additionally, the plaintiff claims that Mr. Glasser spent 5.0 hours, Mr. Boreth spent 10.7 hours, and Mr. Feingold spent 33.6 hours.  Thus, the total amount of hours sought in the initial fee request is 611.1.  See (DE# 150-25, Ex. 7, 1/28/09).  In support of his fee request, the plaintiff submitted the billing statements of his counsel.

In considering a fee application, a court should exclude from the initial fee calculation hours that were not "reasonably expended."  Hensley, 461 U.S. 424, 434. In Hensley, the Supreme Court explained that

> [c]ases may be overstaffed, and the skill and experience of lawyers vary widely.  Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary just as a lawyer in private practice ethically is obligated to exclude such hours from his fee submission.  "In the private sector, 'billing judgment' is an important component in fee setting.  It is no less important here.  Hours that are not properly billed to one's *client* are not properly billed to one's *adversary* pursuant to statutory authority."

Id. (quoting Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir.  1980)).  For the calculation of the lodestar, both parties rely on the twelve factors set forth in the Fifth Circuit decision of Johnson v. Georgia Highway Express, Inc., 488 F.2d 714 (5th Cir.

11

1974).[2]  The Supreme Court noted that while district courts may consider the factors identified in Johnson, the district court should also note that many of the factors are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate.  Hensley, 461 U.S. at 434 n.9.

As an objective basis on which to make the initial estimate of the fee award, this Court may rely on the calculation of hours reasonably expended multiplied by a reasonable hourly rate.  Id. at 433; Loranger v. Stierheim, 10 F.3d 776, 781 (11th Cir. 1994).  This "lodestar" may then be adjusted for the results obtained.  Id.  A reduced fee award is appropriate if the relief, however significant, is limited in comparison to the scope of the litigation as a whole.  Hensley, 461 U.S. at 433.  This Court has the discretion to determine what fee is reasonable.  Id.  A court may rely on its own knowledge and expertise in making fee determinations.  ACLU of Georgia v. Barnes, 468 F.3d 423, 428 (11th Cir. 1999).

Lastly, courts should bear in mind that "the measure of reasonable hours is determined by the profession's judgment of the time that may be conscionably billed and not the least time in which it might theoretically have been done."  Id. at 432 (quoting Norman, 836 F.2d at 1306).  "Redundant hours must be excluded from the reasonable hours claimed by the fee applicant."  Id. (quoting Hensley, 461 F.2d at 434).  "Such 'hours generally occur where more than one attorney represents a client.'"  Id. (quoting Norman, 836 F.2d at 1301-02).  To recover for the hours of multiple attorneys,

---

[2]In Bonner v. Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981), the Eleventh Circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

the fee claimant must satisfy his burden of showing that the time incurred by those attorneys "reflects the distinct contribution of each lawyer to the case and is the customary practice of multiple-lawyer litigation." Id. at 432.

In the present action, the plaintiff obtained the relief he sought. The defendant does not dispute that it entered into a settlement with the plaintiff and agreed to compensate the plaintiff $20,000.

The plaintiff submitted his counsel's billing statements in support of the fee request and the Court has reviewed them. In reviewing the billing statements, the Court is mindful of the necessity for attorneys to identify the subject matter of their time expenditures. Hensley, 461 U.S. at 437. If there is inadequate documentation or if the Court finds a claim for hours to be "excessive or unnecessary," the Court may reduce the number of hours for which fees will be awarded. Florida Patient's Compensation Fund v. Rowe, 472 So. 2d at 1145, 1150 (Fla. 1985).

Before addressing the plaintiff's billing statements, the undersigned pauses to comment upon the behavior of both sides in this litigation. This is a case concerning a claim for overtime pay by a single limousine driver. The plaintiff added a claim for retaliation in the second action, but did little discovery to support the claim. The issues in this case were not overwhelmingly complicated. Notwithstanding, the case docket contains approximately two hundred (200) entries. In the undersigned's experience, the number of filings in this case substantially exceeds that which would have been necessary to bring the action to its proper resolution, even if it had gone to trial. See Reynolds v. McInnis, 338 F.3d 1201, 1220 (11th Cir. 2003) ("The promise of fees [as prevailing party under the FLSA] for time spent without regard to the outcome of a

motion ... in a case that apparently has endless potential for dispute may be the kerosene that has fueled the litigation fires which have raged out of control in this case.").

In its response, the defendant lays blame squarely on the plaintiff, accusing the plaintiff of all sorts of inappropriate and vexatious conduct in multiplying the proceedings.  The undersigned finds that the defendant is not a mere victim of an overly litigious plaintiff and is in no way blameless in this case.   See Reynolds, 338 F.3d at 1220 n. 19 ("Of course, the attorneys for the plaintiff are not the only ones whose monetary self-interest will be damaged by the end of this lucrative, fee-generating case.  The defendant['s] attorneys are also compensated for time spent and the longer the case goes on the more they will be compensated.  Whether and to what extent their incentives need adjusting is something that the defendant[ ] ..., who pay[s] the cost of [its] own representation, will have to decide.") The apparent lack of communication between counsel is evidenced by the numerous discovery disputes, most of which should have been resolved without court intervention.  Not only was the defendant vigorously defending this action, the defendant also filed two separate state court actions against the plaintiff: 1) one for property damage to one of its vehicles; and 2) another for tortious interference and defamation.   Before the first case was dismissed, the Court warned that the plaintiff would be entitled to fees incurred in that action should he prevail in a subsequent action.  At the evidentiary hearing, the defendant argued that a substantial reduction in the fees requested is warranted.

Upon independent review of the plaintiff's billing statements submitted to this Court, the undersigned finds that approximately fifty-three percent (53%) of the hours

14

claimed by the plaintiff were excessive or unnecessary in the initial fee request.  The overall fifty-three percent (53%) reduction is based on reductions per category as analyzed below as to the initial fee request only. Therefore, the Court will recommend reducing by 323.8 hours the total number of hours billed by Mr. Kleppin (and three other attorneys) for which a fee is to be awarded as requested in the initial fee request.  The supplemental fee requests are addressed separately.

In Exhibit 7 to the initial fee motion (DE# 150-25, Ex. 7,1/28/09), Mr. Kleppin identifies the time he billed in the following categories: substantive motions, discovery, other pleadings, depositions, court hearings, review and drafting of correspondence and orders, telephone calls, trial preparation, mediation and settlement, miscellaneous, and settlement motions for fees and costs.  The plaintiff's fee expert, Marc Cooper, recommends a small reduction of fees in the categories identified by Mr. Kleppin. Based on the Court's independent review of the time entries listed in Exhibit 7, the undersigned finds that the plaintiff's categorization of time did not accurately reflect the actual amount of time incurred in certain categories (e.g. telephone calls and correspondence addressing depositions were not listed under "depositions"). Accordingly, the Court's review of hours in the chart below more accurately reflects the actual time attributed to the main categories of legal work performed in this action.  The following chart summarizes the hours struck from the plaintiff's claim from  the following separate categories:

| Category | Attorney Hours Expend-ed per Pl.'s Counsel | Pl.'s Expert Re-com-mend-ation | Attorney Hours Expend-ed per Court Review | Award of Hours | Percent Reduc-tion | Dollar Amount of Award |
|---|---|---|---|---|---|---|
| Written Discovery; Discovery Motions | 42.3 | 31.3 | 85.2 | 30 | 65% | $  9,000.00 |
| Depositions | 183.4 / 155.5[3] | 164.4 | 196.5 | 100 | 49% | $ 30,000.00 |
| Substantive Motions | 142.0 | 141.0 | 155.2 | 69.3 | 55% | $ 20,790.00 |
| Settlement and Mediation | 13.9 | 13.9 | 17.2 | 10 | 42% | $  3,000.00 |
| Other Attorneys | 49.3 | 49.3 | 49.3 | 7.5 | 85% | $  2,250.00 |
| Trial Preparation | 57.3 | 57.3 | 63.8 | 31.9 | 50% | $  9,570.00 |
| Initial Fee & Costs Motions | 34.3[4] | 34.3 | 34.3 | 33.4 | 3% | $ 10,020.00 |
| Other[5] | 88.6 | 82.0 | 9.6 | 4.8 | 50% | $  1,440.00 |
| Total | 611.1 | 573.5 | 611.1 | 286.9 | 53% overall | $86,070.00 |

---

[3] Approximately 28 hours were spent reviewing deposition transcripts for use in the case and for the motion for summary judgment, which leaves approximately 155.5 hours spent on preparing for and attending depositions.

[4] Only the time incurred up to the filing of the initial fee application on January 28, 2009, is included.  To date, a total of <u>157.9 hours</u> ($47,470) for fees has been sought.

[5] The "other" category is calculated for plaintiff as the difference between the total amount of hours sought by the total amount of hours sought by Mr. Kleppin and the hours in the categories identified in this chart (561.8 - 473.2 =88.6).  The plaintiff's expert recommend 82 hours in these "other" categories (i.e. other pleadings, hearings, correspondence, reviewing orders and filings, etc.).  The undersigned's "other" category is calculated as the difference between the total amount of hours sought by the plaintiff and the hours in categories found by the undersigned (561.8 - 552.2 = 9.6)

16

1.      **Excessive and Unnecessary Discovery**

      a.      Excessive and unnecessary written discovery and discovery-related
           motion practice:

The plaintiff claims that his counsel spent <u>42.3 hours</u> on "discovery."  A review of
the breakdown of various categories in Exhibit 7 to the initial fee request reveals that
more than double that amount (approximately <u>85.2 hours</u>) was actually spent on written
discovery and discovery-related motion practice.  The additional 43.1 hours are located
in many other sub-categories, for example: 22.3 hours in "other pleadings;" 1 hour in
"miscellaneous;" 5.5 hours in "telephone calls;" 5.7 hours in "hearings;" 6.8 hours in
"correspondence;" and 8.4 hours in "review of orders and filings."  The amount of fees
actually incurred for written discovery and discovery-related motion practice is
approximately <u>$25,560</u>.

The plaintiff incurred over 85 hours of legal fees for propounding at least eight
requests for production, five sets of interrogatories, responding to written discovery,
drafting and responding to motions to compel, motions to strike, and preparing for,
attending hearings, and reviewing orders on same.  The defendant complains that the
written discovery was excessive.  In his Second Set of Interrogatories, the plaintiff
sought the name and address of all of the defendant's limousine drivers for the past five
years.  In the Seventh Request for Production, the plaintiff sought the personnel files for
all of the defendant's drivers for a five-year period of time.  Despite a retaliation claim,
the plaintiff's counsel asked no questions regarding the reasons for the plaintiff's
termination in the extensive depositions.  Instead, on July 13, 2008, in the Plaintiff's
Fifth Set of Interrogatories, the plaintiff asked the defendant to identify the person who

participated in the decision to terminate the plaintiff and to identify the documents regarding the termination decision.  A review of the billing reveals that much of this work was unnecessary and unreasonable.  The parties should have been able to resolve many of the discovery-related disputes without court intervention.  The undersigned finds that this category warrants a substantial reduction of 65% as a result of counsel's inefficient efforts to obtain relevant discovery and the failure to resolve discovery-related disputes without written motion practice and court involvement.  Accordingly, the undersigned recommends that the plaintiff be awarded 30 hours ($9,000).

      b.  <u>Excessive and unnecessary depositions</u>:

The plaintiff took nineteen (19) of the twenty-three (23) depositions in this action. The plaintiff claims that he incurred approximately 183.4 hours of attorney time for depositions.  Again, a review of Exhibit 7 reveals that this category fails to include time incurred that was related to the scheduling of depositions via correspondence and telephone calls (11.3 hours) and review of orders and filings (1.8 hours).  Time entries on Exhibit 7 show that 196.5 hours were spent on depositions.  Thus, the plaintiff incurred approximately $58,950 on depositions.

The defendant complains that Mr. Kleppin took lengthy depositions and asked many deponents irrelevant questions.  The plaintiff's counsel had filed at least three prior lawsuits representing other former limousine drivers of the defendant seeking overtime pay.   Mr. Turk, the defendant's expert, opines that the plaintiff's counsel could have obtained information much more succinctly in this action based on his prior knowledge of the defendant's business and operations.  In Mr. Turk's opinion, the plaintiff took lengthy depositions that explored areas and obtained information irrelevant

to the plaintiff's claim.  Interestingly, Mr. Kleppin did not inquire about facts relevant to the plaintiff's retaliation claim in any of the twenty-three depositions.

Notably, the plaintiff's counsel never took a Rule 30(b)(6) deposition of the defendant's corporate representative.  The defendant's expert opines that such deposition(s) would take much less time with fewer deponents than counsel for plaintiff's approach in this action.  Mr. Kleppin defends his decision to take numerous depositions of the defendants' employees because he believes that the depositions produced evidence that the plaintiff was economically dependent on the defendant.  Mr. Kleppin maintains that had he simply taken a Rule 30(b)(6) deposition, the defendant may have been successful on its motion for summary judgment.

Mr. Kleppin took three depositions of the defendant's corporate representatives as well as many managers. The defendant's fee expert explains that many of the depositions of the defendant's former employees were unnecessarily long; some took the better part of a day.  For example, the deposition of Kenny Weller, a former dispatcher, started at 9:10 a.m. and lasted until 4:30 p.m. on November 7, 2007.  Similarly, the deposition of Ezio Mattasi, a former quality control employee, started at 9:20 a.m. and lasted until 4:45 p.m. on October 16, 2008.

In the defendant's expert's opinion, the bulk of the deposition inquiries by the plaintiff's counsel sought information on the entire class of limousine drivers employed by the defendant over a period of years.  However, the plaintiff's counsel never sought court approval to certify this case a collective action.  Curiously, the plaintiff's fee expert, Marc Cooper, bases his opinion that the plaintiff should be awarded substantial fees because "this case was litigated as an 'industry' case."  Cooper Afd. at ¶ 17 (DE#

19

150-23, 1/28/09).  An individual FLSA case is not litigated as an "industry" case absent a court-approved certified collective action.  Admittedly, Mr. Cooper is retired and did not practice labor and employment law.

The defendant identifies counsel for plaintiff's repeated inquiries of lay witnesses regarding their opinions of judicial opinions and governmental regulations rather than seeking out facts to support the plaintiff's claim as another area of waste during the extensive depositions.  See Goodman deposition at pp. 359, 368-69 (11/8/07); see also Tinkler deposition at pp.234-35, 244-45 (4/7/08); see also Sorci deposition at pp. 142-43 (11/12/07).

The plaintiff's own fee expert, Marc Cooper, concedes that "Mr. Kleppin sometimes digressed into an off-topic line of questioning in a manner that was, arguably, unnecessary."  Cooper Declaration at ¶ 31 (DE# 150-23, 1/28/09).  Mr. Cooper further averred that "... there should be limits to thoroughness when a prevailing party seeks to have the defendant pay his fees pursuant to a fee shifting statute."  Id. Consequently, Mr. Cooper opined that it is appropriate to deduct nineteen hours from the total hours incurred for depositions, which reflects a one-hour deduction per deposition taken by Mr. Kleppin.  Id. at ¶ 32.  The undersigned agrees that a reduction is warranted, but finds that Mr. Cooper's suggested reduction is not enough.

After hearing testimony and reviewing the transcript of the discovery hearing before the Honorable Paul C. Huck on June 11, 2008, it appears that Mr. Kleppin mistook the Court's expressed exasperation for permission to undertake as many depositions as the plaintiff wished.  Rule 30(a)(2)(A)(i) of the Federal Rules of Civil Procedure generally limits each party to a maximum of ten (10) depositions without

leave of Court.  Local Rule 26.1(K) of this Court generally limits the duration of a deposition to seven (7) hours. S.D. Fla. L.R. 26.1(K).  Rule 26.1(a)(1)(A)(i) of the Federal Rules of Civil Procedure requires the parties to exchange initial disclosures that identify persons who have discoverable information as well as the subject matter of that information that supports the parties' respective claims and/or defenses.

It is incumbent upon counsel for the parties to determine the ten best individuals to depose. Notwithstanding that the undersigned permitted the plaintiff to take one additional deposition, the undersigned finds that nineteen depositions is excessive and warrants a reduction.  Counsel for the parties do not have unfettered discretion to take as many depositions as they like and certainly should not expect to be reimbursed by the opposing party for the lack of efficiency and necessity.   As explained below in the analysis regarding costs, the undersigned recommends that the plaintiff's counsel be reimbursed for the reasonable hours incurred for the following ten (10) depositions only: 1) S. Tinkler; 2) M. Goetz; 3) N. Goodman; 4) K. Weller; 5) J. Boggs; 6) R. Sorci; 7) M. Farmer; 8) T. Vessechia; 9) J. Emmerman; and 10) M. Howard.   The undersigned recommends that 96.5 hours (96.5 hrs. x $300/hr. =$28,950) be deducted for excessive and unnecessary hours incurred for coordination of, preparation for, taking and reviewing the depositions of additional witnesses[6] that were taken or were to be taken by the plaintiff's counsel.  Accordingly, the undersigned recommends that the plaintiff be awarded 100 hours ($30,000), which includes time for preparing for, taking, and

---

[6]The additional witnesses that are excluded are: H. Goldstein, S. Kaufman, N. Talbot, Egozi, E. Mattasi, N. Sorci, M. Nussbaum, M. Garcia, L. Schneider, M. Burgos, T. Schmidt, S. Stern, R. Mendoza, B. Clarke, I. Geraldo, L. Thornberry, and T. Quinlan.

reviewing the ten depositions and transcripts (196.5 - 96.5 = 100 hours at $300/hr). This constitutes a 49% reduction from the amount claimed.

2.   **Substantive Motions**:

The plaintiff claims he incurred 142 hours on "substantive motions."  Exhibit 7 reflects an additional 13.2 hours for this category of work that was listed under other sub-categories.  Thus, 155.2 hours were spent on substantive motions.

a.   Motion to Dismiss

The plaintiff incurred 28.8 hours regarding the defendant's motion to dismiss and plaintiff's motion to dismiss the counterclaim. The Court denied both motions. Mr. Feingold spent 3.8 hours on legal work related to the plaintiff's response to the defendant's motion to dismiss.  His time entries do not reflect his distinct contribution and should be disallowed.  The undersigned finds that a further reduction of 9.5 hours is warranted.  Thus, the undersigned recommends that the plaintiff's be awarded $5,790 for 19.3 hours (33% reduction) for the fees incurred on the motions to dismiss.

b.   Motion for Summary Judgment

Both parties filed motions for summary judgment.  The Court denied both parties' motions.  The plaintiff claims that he incurred approximately 106 hours on legal work relating to the plaintiff's motion for summary judgment and the defendant's motion for summary judgment.  A review of Exhibit 7 reveals an additional 13.2 hours related to the motions for summary judgment.  The plaintiff spent 104 hours on his own motion for partial summary judgment and spent approximately 15.2 hours on responding to the defendant's motion for summary judgment.  Thus, 119.2 hours were incurred on the motions for summary judgment.

22

The defendant complains that the hours incurred by the plaintiff for his motion for summary judgment should be substantially reduced because the motion was not well-taken by the Court.  The defendant contends that the plaintiff should not have filed a summary judgment on the applicable rate for overtime of a limousine driver because prior decisions in this Court ruled that the applicable rate is half-time not time-and-a-half.  Although such decisions existed, they are not binding and do not constitute precedent for purposes of resolving the issue.  Moreover, defendant's motion for summary judgment sought relief that is directly contravened by certain existing decisions in this Court as well.

The defendant sought a ruling in its favor to exempt it from liability for limousine drivers under the FLSA.  The undersigned finds that both parties were within their rights to seek alternative rulings from this Court.  Irrespective of whether the plaintiff filed his own motion for summary judgment, he necessarily would have included some, if not all, of the arguments in his own motion in his response in opposition to the defendant's motion for summary judgment.   Consequently, the undersigned finds that the plaintiff should be compensated for a reasonable amount of time incurred in filing his motion for summary judgment and responding to the defendant's motion for summary judgment.

The total amount incurred for legal work related to the cross-motions for summary judgment is 119.2 hours.  The undersigned finds that there was some overlap in the legal work performed in support of the plaintiff's motion for partial summary judgment and in opposition to the defendant's motion for summary judgment.  The undersigned finds that a reduction of 69.2 hours is warranted, which amounts to a 58% reduction.  Thus, the undersigned recommends that the plaintiff be awarded $15,000

(50 hrs. x $300/ hr.) for fees incurred on the cross-motions for summary judgment.

The undersigned recommends an award in the amount of $ 20,790.00 for a total

69.3 hours for legal work performed on substantive motions.  The overall reduction in

this category is 55%.

**Mediation and settlement discussions**

Once again, the amount claimed, 13.9 hours, is less than what Exhibit 7 reveals

in other categories for work related to mediation and settlement. (DE# 150-25, 1/28/09).

An additional 3.3 hours for mediation and settlement work was actually incurred.  Thus,

17.2 hours are claimed, excluding time incurred by Messrs. Glasser and Boreth.  Ten of

the hours billed is for attending the settlement conference on December 9, 2008. Both

Messrs. Boreth and Mr. Glasser attended the mediation and billed 2.5 hours

respectively.  Only one attorney needed to attend the mediation and the 2.5 hours are

awarded in the separate category "other attorneys."  The undersigned finds that a 42%

reduction is warranted.  Therefore, the undersigned recommends that the plaintiff be

awarded a total of $3,000 for 10 hours at $300/hr. for mediation and settlement work

performed by Mr. Kleppin.

**Other Attorneys**

The plaintiff seeks 49.5 hours for work performed by the following three

additional attorneys: Mr. Boreth (10.7 hours at $400/hr. = $4,280); Mr. Glasser (5.0

hours at $400/hr. = $2,000); and Mr. Feingold (33.6 hours at $300/hr. = $10,800).  The

total fee claimed for these additional attorneys is $16,360.  The Eleventh Circuit

recognizes that:

> [r]edundant hours generally occur where more than one attorney
> represents a client.  There is nothing inherently unreasonable about a
> client having multiple attorneys, and they may all be compensated if they
> are not unreasonably doing the doing the same work and are being
> compensated for the distinct contribution of each lawyer.

Norman v. Housing Authority, 836 F.2d 1292, 1301-1302 (11th Cir. 1988) (citing

Johnson v. University College of University of Alabama in Birmingham, 706 F.2d 1205,

1208 (11th Cir.), cert. denied, 464 U.S. 994 (1983)).  Thus, to recover time for multiple

attorneys, the fee applicant bears the burden of showing that the time spent by those

attorneys reflects the distinct contribution of each lawyer to the case and the customary

practice of multiple-lawyer litigation.  ACLU v. Barnes, 168 F.3d 423 (11th Cir. 1999).

In the defendant's expert's opinion, the time incurred by Messrs. Boreth and

Glasser should not be compensated (15.7 hours x $400/hr. = $6,280).  Id. at ¶ 62.  The

defendant's expert explains that Mr. Boreth spent no time preparing for the mediation

and that he was of little assistance at the mediation.  Mr. Turk further opines that the

4.8 hours of time ($2,160) incurred by Mr. Boreth to draft a settlement agreement for

possible use at mediation was excessive and unnecessary.  Id. at ¶ 55.  At the hearing,

there was no testimony to prove that the settlement agreement drafted by Mr. Boreth

was anything more than a routine settlement agreement.   Moreover, Mr. Boreth's time

entries include work that is paralegal in nature and not properly chargeable as attorney

fees.   Such entries require 100% reduction because the client should not be expected

to pay for an attorney to perform clerical tasks.   Examples of paralegal and/or clerical

work performed by Mr. Boreth are as follows:

| Date | Time Entry | Time Billed | Fees |
|------|-----------|-------------|------|
| 5/5/08 | Issue witness fee checks | .5 | $225 |
| 4/3/08 | Performed address search for James Emerman | .2 | $ 90 |
| 9/16/08 | Performed Accurint Search re addresses for Ezio Mattasi and Michael Nusbaum | .5 | $225 |

The defendant's expert also challenges the fees incurred by Mr. Glasser for his attendance at mediation on November 15, 2007.  Mr. Glasser spent approximately 1.6 hours preparing for the mediation by speaking with the plaintiff.  There was no record that he had any preparation time for mediation other than talking with the plaintiff. Additionally, Mr. Glasser performed work that was paralegal in nature. (e.g. 11/18/08 billed .4 ($180) to review order scheduling jury trial and pretrial calendar; checked calendared dates and schedule of important dates).

Mr. Feingold spent 33.6 hours ($300/hr = $10,800) on the litigation.  With the exception of two depositions discussed below, Mr. Feingold's time entries do not describe his distinct contribution to the case.  Examples of duplicative work are as follows:

| Date | Time Entry | Attorney | Time Billed |
|------|-----------|----------|-------------|
| 6/26/07 | Draft civil cover sheet and complaint | CK Kleppin | .5 |
| 6/27/07 | Review and revise Complaint and draft civil cover sheet and file with clerk of Court | BF Feingold | 1.2 |

| Date | Time Entry | Attorney | Time Billed |
|------|-----------|----------|-------------|
| 7/16/07 | Review Order Setting Civil Jury Trial Date and Pretrial Schedule; review various dates | CK Kleppin | .3 |
| 7/16/07 | Receipt and review of Scheduling Order, Motion to Dismiss and Motion to Continue | BF Feingold | 1.0 |
| | | | |
| 7/23/07 | Review and revise Plaintiff's Statement of Claim | CK Kleppin | .2 |
| 7/24/07 | Draft and e-file Statement of Claim and send copy to client | BF Feingold | 2.2 |
| | | | |
| 7/25/07 | Review Order Denying Transfer | BF Feingold | .2 |
| 7/30/07 | Review Order Denying Motion to Transfer Case | CK Kleppin | .2 |
| | | | |
| 7/30/07 | Review Defendants' Motion to Dismiss; draft part of response | CK Kleppin | 2.7 |
| 8/1/07 | Draft part of Response to Motion to Dismiss | BF Feingold | 3.1 |
| 8/2/07 | Finish drafting Response to Motion | CK Kleppin | 2.4 |
| 8/7/07 | Review discovery requests, correspondence to client re: same and calendar dates | BF Feingold | .5 |
| 8/13/07 | Review Defendants' Discovery Requests | CK Kleppin | .3 |
| | | | |
| 8/7/07 | Review of Reply to our Response to Motion to Dismiss | BF Feingold | .4 |
| 8/8/07 | Review Defendants' Reply to Motion to Dismiss | CK Kleppin | .3 |

| Date | Time Entry | Attorney | Time Billed |
|------|-----------|----------|-------------|
| 8/21/07 | Review Answer and Affirmative Defenses and Counterclaim | BF Feingold | .5 |
| 8/21/07 | Review Defendants' Answer and Affirmative Defenses | CK Kleppin | .2 |
|  |  |  |  |
| 11/13/07 | Draft Amended Statement of Claim and Supplemental Disclosures | CK Kleppin | .8 |
| 11/13/07 | Revise Amended Statement of Claim | BF Feingold | .3 |

The undersigned finds these entries to be evidence of excessive and duplicative billing.  Mr. Feingold attended two depositions: Mitchell Howard (5.0 hours on 4/8/08) and Dragana Padurjan (5.0 hours on 4/15/08).[7] Mr. Howard's deposition is one of the ten depositions that the undersigned finds to be reasonable and necessary.   The undersigned recommends that 42.0 hours of duplicative and unnecessary work incurred by Mr. Feingold (33.6 hours), Mr. Boreth (10.7 hours) and  Mr. Glasser (2.5 hours) be excluded.  This amounts to a 85% reduction.  The undersigned recommends that $2,250 be awarded to the plaintiff for 5.0 hours at $300/hour incurred for Mr. Howard's deposition and 2.5 hours for Mr. Glasser's time at $300 per hour for attendance at mediation.

**Trial Preparation**

The plaintiff claims 57.3 hours of legal work for trial preparation.  The

---

[7]Curiously, on April 18, 2008, Mr. Kleppin billed .1 for "Review of Notice of Cancellation of Depositions of Sasa Padurjan and Dragana Padurjan."  It is unclear whether an additional deposition of Dragana Padurjan was scheduled and cancelled.

undersigned found an additional 6.5 hours which were listed under other categories in Exhibit 7.  The total incurred for trial preparation is 63.8 hours ($19,140).  The undersigned finds that a 50% reduction is warranted.  The undersigned recommends that the plaintiff be awarded 31.9 hours ($9,570) for trial preparation.

### Initial Fees for Seeking Fees and Costs

In his initial fee request, the plaintiff seeks 34.3 hours for legal work related to filing his motion for fees and costs in January 2009.  The plaintiff spent approximately 20.2 hours on the motion for fees and supporting affidavit and 12.2 hours on the motion for costs.  The undersigned recommends that .5 hour ($150) be disallowed for legal work related to the motions for extension of time for filing the motions for fees and costs.  This constitutes a 3% reduction.  The undersigned recommends that the plaintiff be awarded 33.4 hours ($10,020) for filing his initial motion for fees and motion for costs.

### Other Time Entries

A balance of 9.6 hours for time entries remain.[8]  The remaining 9.6 hours come from the following categories listed on Exhibit 7:  "other pleadings," "correspondence," "hearings," review of orders and filings," "telephone conferences," and "miscellaneous." Many of these time entries lack detail for the undersigned to analyze the reasonableness of the time spent.  The undersigned finds that a 50% reduction is

_____

[8]The 9.6 hours is the difference between the amount of hours sought by the plaintiff and the total amount of hours in the undersigned's categories (611.1 - 601.5= 9.6).  The 601.5 hours are the total hours for the following categories: 85.2 hours (written discovery); 196.5 hours (depositions); 155.2 hours (substantive motions); 17.2 hours (mediation and settlement); 34.3 hours (fees and costs motions); 63.8 (trial preparation); and 49.3 (other attorneys).

warranted, which is the average recommended reduction in the categories discussed above.  The undersigned recommends that the plaintiff be awarded 4.8 hours ($1,440) of the remaining hours.

Accordingly, the undersigned RECOMMENDS that attorneys' fees sought in the initial fee request in the total amount of $86,070 be awarded for legal work performed by Mr. Kleppin (286.9 hours at $300/hr. = $86,070).  This overall reduction of hours billed is 53%.

### V.   **Fees for Seeking Fees - Supplemental Fee Applications**

The case settled on December 9, 2008.  In the plaintiff's initial fee application, Mr. Kleppin claims 34.3 hours for his work related to motions for fees and costs, which amounts to $11,340 in fees.  Since January 2009, the plaintiff has supplemented his fee request twice.  In the first supplemental fee request filed in June 2009 (DE# 173, 6/22/09), the plaintiff seeks an additional 52.8 hours for Mr. Kleppin ($15,840) for legal work performed between January 22, 2009 and June 10, 2009.  Additionally, the first supplemental fee request seeks reimbursement for 46.5 hours ($13,950) at $300 per hour incurred by the plaintiff's fee expert, Marc Cooper, Esq.   After the evidentiary hearing, the plaintiff filed a notice (i.e. second supplemental fee request) seeking an additional 20.8 hours ($6,240) for Mr. Kleppin's time for work performed between June 10, 2009 and October 10, 2009.  (DE# 198, 10/9/09)

As of October 9, 2009, the plaintiff claims $47,370 for 157.9 hours on the plaintiff's motions for fees and costs.  The initial 34.3 hours were addressed above and are not included in this analysis.  This section addresses the additional 120.1 hours sought in the first supplemental fee request and the October notice.  Included in this

time are several motions for extensions, several lengthy oppositions to the defendant's motions for extensions, review of orders on motions for extensions, the evidentiary hearing, and the fee expert's work.

## A.     Mr. Kleppin's Fees Seeking Fees and Costs

A prevailing party is entitled to an award of attorneys' fees for the time spent litigating the fees' issues.  Johnson v. University College, 706 F.2d 1205, 1207 (11th Cir.), cert. denied, 464 U.S. 994 (1983).  "A request for attorney's fees should not result in a second major litigation."  Norman, 836 F.2d at 1303 (quoting Hensley, 461 U.S. at 437).  Excluding the fee expert's 46.5 hours, Mr. Kleppin seeks a total of 111.4 hours ($33,420) for litigating the fee issue.  The undersigned previously analyzed the initial fee request and recommended a reduction of .5 hours for a net of 33.4 hours ($10,020) for the initial fee application.  The 111.4 hours include 34.3 hours incurred in filing the initial motion for fees and motion for costs, 52.8 hours for essentially opposing extensions sought by the defendant to file its responses and for filing the plaintiff's replies to the fees and costs motions, and 20.8 hours for the evidentiary hearing and multiple supplemental filings.

During the evidentiary hearing, the defendant complained that the plaintiff would more than likely seek additional fees up to and including work regarding the evidentiary hearing.  True to form, both parties engaged in supplemental filings after the evidentiary hearing and the plaintiff filed additional billing statements (e.g. plaintiff filed two notices of supplemental authority, the defendant filed a motion to strike, the plaintiff filed a motion for leave to file the notice of supplemental authority, and both parties responded in opposition and filed their respective replies).

31

The undersigned finds that the vast majority of the fees incurred after the initial fee request in January 2009 are unreasonable, particularly the oppositions to motions for extensions (Mr. Kleppin billed approximately 2 hours for plaintiff's response on February 4, 2009), approximately 30 hours to draft the plaintiff's replies in support of their motions for fees and costs, and the post-evidentiary hearing filings. The undersigned finds that 10 hours to draft the replies is reasonable. The undersigned finds that of the 20.8 hours for Mr. Kleppin's time incurred between June 22, 2009 and October 9, 2009, the undersigned will exclude 13.8 hours as unreasonable. The undersigned recommends that seven (7) hours ($2,100) for the time incurred on the day of the evidentiary hearing (9/24/09) be awarded. Thus, the undersigned recommends that a total of <u>17 hours ($5,100)</u>[9] be awarded for legal fees incurred after the initial motions for fees and costs were filed. This reflects a reduction of seventy-seven percent (77%) for the fees incurred after the initial motions for fees and costs were filed.

### B.    Fee Expert's Fees Should Be Disallowed

The defendant contends that the plaintiff is not entitled to any fees for the work performed by the plaintiff's fee expert. The defendant argues that Mr. Cooper did not represent the plaintiff in this action; he served as an expert witness. As such the defendant reasons that Mr. Cooper's "fees" are not "attorney's fees," but rather expert fees that are actually "costs" that are limited under 28 U.S.C. § 1920. The plaintiff, however, is not seeking reimbursement of Mr. Cooper's fees as costs. The plaintiff

---

[9]Thus, the total amount recommended for legal fees incurred in seeking legal fees and costs is <u>$15,390</u> for (34.3 initial hours + 17 supplemental hours = <u>51.3 hours</u>).

maintains that Mr. Cooper's fees should be reimbursed because Local Rule 7.3 of this Court requires the fee application to be supported by an expert affidavit. There are many aspects of litigation that the parties are required to perform notwithstanding that costs associated with performance may not be taxable (e.g. mediation).

The defendant relies on the Eleventh Circuit decision in Glenn v. General Motors Corp., 841 F.2d 1567 (11th Cir.) cert. denied, 488 U.S. 948 (1988), which applied the Supreme Court's holding in Crawford Fitting Co. v. J.T. Gibbons, Inc., 482 U.S. 437, 442-45 (1987). In Glenn, the Eleventh Circuit "[held] that the district court erred in awarding expert witness fees in excess of the amount permitted by 28 U.S.C. § 1821 and 28 U.S.C. § 1920." Id. at 1575. In Glenn, the Eleventh Circuit analyzed whether expert witness fees could be awarded pursuant to a fee-shifting statute, namely the Equal Pay Act. The Court held that "the broad language of *Crawford Fitting* does not permit a distinction based upon whether or not an award is made under a fee-shifting statute." Id.

In Crawford Fitting, the Supreme Court held that, in taxing costs pursuant to Fed. R. Civ. P. 54(d), a district court may only award a prevailing party those costs authorized by 28 U.S.C. §1920 in the absence of any other statutory or contractual authority, and specifically held that the fees of expert witnesses that are not appointed by the district court are not taxable where the statute or contract governing the relief obtained does not provide for them. Crawford Fitting, 482 U.S. at 442-45.

In Glenn, the Eleventh Circuit explained that "[t]he broad language of *Crawford Fitting* indicates that, although a statute may shift *attorney* fees, the statute does not operate to shift *witness* fees unless the statute refers explicitly to witness fees." 841

F.2d at 1575.   The <u>Glenn</u> Court found that "Section 216(b) does not refer explicitly to witness fees" and that "nothing in the legislative history associated with Section 216(b)'s passage suggests that Congress intended the term 'costs of the action' to differ from those costs now enumerated in 28 U.S.C. § 1920."  <u>Id</u>.

Another Eleventh Circuit decision, <u>Morrison v. Reichhold Chemicals, Inc.</u>, 97 F.3d 460 (11th Cir. 1996), also supports the defendant's position that the expert fees are limited by 28 U.S.C. § 1920.  In <u>Morrison</u>, the district court attempted to distinguish <u>Crawford Fitting</u> on the ground that the Supreme Court did not "decide whether a losing party could be required to pay the fee charged by his expert witnesses when they were deposed by the winning party."  97 F.3d at 463 (quoting the record of the district court). In <u>Morrison</u>, the district court's rationale was based on the economic reality that expert witnesses charge considerably more than the statutory witness fee of $40 per day.  In reversing the district court, the Eleventh Circuit explained that "[a]lthough we appreciate the district court's frustration with the disparity between economic reality and statutory imperative, we cannot ignore the Supreme Court's direct statements to the contrary:

> We think that is it clear that in §§1920 and 1821, Congress comprehensively addressed the taxation of fees for litigants' witnesses. This conclusion is all the more compelling when we consider that §1920(6) allows the taxation, as a cost, of the compensation of court-appointed expert witnesses.  There is no provision that sets a limit on the compensation of court-appointed expert witnesses in the way that § 1821(b) sets a limit for litigants' witnesses.  It is therefore clear that when Congress meant to set a limit on fees, it knew how to do so.  *We think that the inescapable effect of these sections in combination is that a federal court may tax expert witness fees in excess of the $[40]-per-day limit set out in with §1821(b) only when the witness is court-appointed*.  The discretion granted by Rule 54(d) is not a power to evade this specific congressional command.  Rather, it is solely a power to decline to tax, as costs, the items enumerated in §1920.

34

Id. (quoting Crawford, 482 U.S. at 442) (emphasis in original).

Although the expert witnesses in Glenn and Morrison were not attorney fee experts, the undersigned finds that Glenn and Morrison should apply to the fees of plaintiff's fee expert in this action because Section 216(b) is the operative statutory provision for recovery of fees and costs to the prevailing party and the statute does not expressly provide for expert witness fees.  Consequently, the undersigned recommends that the fees of the plaintiff's fee expert, Marc Cooper, who was not court-appointed, in the amount of $13,950 for 46.5 hours be disallowed as expert witness fees that exceed the limits of 28 U.S.C. § 1821 and 28 U.S.C. § 1920.

**III.    A Lodestar Adjustment Is Not Requested and Is Not Warranted.**

The plaintiff devotes two pages of his memorandum of law in support of his initial motion for fees to argue that an enhancement of the lodestar is warranted only to conclude that "... Plaintiff's counsel has decided not to seek such an enhancement in this case."  Mot. at 16-17.  This, too, is an example of unnecessary legal work for which the defendant should not have to pay.  In any event, this case is not exceptional and does not warrant an adjustment.  See Pennsylvania v. Delaware Valley Citizens' Council For Clean Air, 483 U.S. 711, 716, 731 (1987) (holding that an enhancement of the lodestar is warranted in exceptional cases in which "there [is] evidence in the record ... that without risk enhancement plaintiff would have faced substantial difficulties in finding counsel in the local or other relevant market"); see also Johnson v. Georgia Hwy. Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974) (providing the factors that a court should consider).

## IV.     Interest

The plaintiff seeks interest on an award of fees and costs from December 10, 2008, the date of the entry of this Court's Final Order.  In <u>Gates v. Collier</u>, 636 F.2d 942 (5th Cir. 1980), the Fifth Circuit[10] held that fees and costs are to be treated alike with respect to interest.  In <u>Georgia Ass'n of Retarded Citizens v. McDaniel</u>, 855 F.2d 794, 799 (11th Cir. 1988), the Eleventh Circuit held that "... the award of costs bears interest from the date of the original judgment." <u>See</u> <u>Copper Liquor, Inc. V. Adolph Coors Co.</u>, 701 F.2d 542 (5th Cir. 1983) (interest awarded on fees from date of original judgment).  The defendant's response does not address the plaintiff's request for interest.  Based on precedent in the Eleventh Circuit, the plaintiff should be awarded interest on an award of fees and costs from December 10, 2008.

## VI.     Plaintiff's Verified  Motion to Tax Costs

The plaintiff seeks costs pursuant to 29 U.S.C § 216(b) of the Fair Labor Standards Act ("FLSA") and Rule 54(d)(1) of the Federal Rules of Civil Procedure. Section 216 directs the Court to award a prevailing plaintiff the costs of the action.  Rule 54(d)(1) provides that "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs."  Fed. R. Civ. P. 54(d)(1).  A "prevailing party," for purposes of the rule, is a party in whose favor judgment is rendered.  <u>See</u> <u>Util. Automation 2000, Inc. v. Choctawhatchee Elec. Coop., Inc.</u>, 298 F.3d 1238, 1248 (11th Cir. 2002).  Having entered into a settlement agreement with the plaintiff and having agreed to pay the plaintiff $20,000, the defendant does not dispute

---

[10]In <u>Bonner v. Prichard</u>, 661 F.2d 1206 (11th Cir. 1981), the Eleventh Circuit adopted the precedent of the Fifth Circuit prior to October 1, 1981.

that the plaintiff is the prevailing party in the case.  Accordingly, the undersigned finds

that the plaintiff is entitled to receive costs recoverable under 28 U.S.C. § 1920.

> A judge or clerk of any of the United States may tax as costs the following:
>
> > (1) Fees of the clerk and marshal;
>
> > (2) Fees for printed or electronically recorded transcripts necessarily

obtained for use in the case;

> > (3) Fees and disbursements for printing and witnesses;
>
> > (4) Fees for exemplification and the costs of making copies of any

materials where the copies are necessarily obtained for use in case;

> > (5) Docket fees under section 1923 of this title;
>
> > (6) Compensation of court appointed experts, compensation of
> >
> > interpreters, and salaries, fees, expenses, and costs of special
> >
> > interpretation services under section 1828 of this title.

28 U.S.C. § 1920 (2008).    In the exercise of sound discretion, trial courts are accorded

great latitude ascertaining taxable costs.   However, in exercising its discretion to tax

costs, absent explicit statutory authorization, federal courts are limited to those costs

specifically enumerated in 28 U.S.C. § 1920.  See Crawford Fitting Co. v. J.T. Gibbons,

Inc., 482 U.S. 437, 445 (1987); see also EEOC v. W&O, Inc., 213 F. 3d 600, 620 (11th

Cir.  2000); see also Glenn v. General Motors Corp., 841 F.2d 1567, 1575 (11th Cir.

1988) (applying Crawford Fitting and finding that district court erred in awarding expert

witness fees in excess of the amount permitted by 28 U.S.C. § 1821 and 28 U.S.C. §

1920).

> In the present action, the plaintiff seeks to recover a total of $40,643.26 in costs.

The undersigned recommends that the plaintiff be awarded $14,158.96 in costs as set forth below.

1.      Fees of the Clerk and Marshall

The plaintiff seeks to recover $700.00 in filing fees.  Sub-section 1920(1) allows for recovery of  "fees of the clerk and marshal."  The defendant concedes that court filing fees are clearly taxable, but argues that the plaintiff should be limited to one filing fee because the plaintiff's failure to be ready for trial necessitated the dismissal of the first action.  When the Court dismissed the first action, it advised the parties that the plaintiff could recover taxable costs in a subsequent action.  The defendant was on notice in the first action that it could be liable for the costs incurred in the initial action as well as a subsequent action.  Under the circumstances, the undersigned recommends that the plaintiff be awarded $700 for expenses associated with the fees of the clerk.

Additionally, the plaintiff requests $5,063.00  for fees for service of summons and subpoenas. Private process server fees may be taxed.   EEOC v. W&O, Inc., 213 F. 3d 600, 623 (11th Cir. 2000).  The defendants concede that fees for summons and subpoenas are an authorized category of costs under Section 1920, but contest the amount sought on the following grounds: 1)  that the process server fees exceed the prevailing rate charged by the U.S. Marshall (i.e. $45 per hour[11] pursuant to 28 C.F.R. § 0.114(a)(3) (2008); 2) that service fees for witnesses that the Court finds the depositions to be unnecessary should be denied; and 3) that service fees for groups of witnesses for whom defense counsel accepted service should be denied.

_____

[11]After this case settled, the rate went up to $55 per hour effective December 18, 2008.  See 28 C.F.R. § 0.114(a)(3) (2009).

The plaintiff's private process server, Frank Carerras, avers that he charges $40 per hour and that the fees increase if it takes him more than one attempt to serve or the witness is located in a county other than Broward County.  Afd. of Frank Carreras (DE#164-6, 4/6/09).  The invoices, however, lack specificity as to the reasons for the increased charges.[12]  In his reply, the plaintiff argues that "[t]here is nothing wrong with having a process ... server [serve] 15 people that the law firm has agreed to accept service of process on.  The defendant did not state to mail the subpoenas to counsel... [The defendant] does not state that the marshall's service would not have billed the same way."  Reply at 2 (DE# 170, 5/22/09).

The undersigned has reviewed the invoices and finds that the process server's fees are excessive on several grounds including: 1) most fees exceed $45 per hour and do not reflect the reason; 2) fees per witness for group service of subpoenas directed to a group of witnesses for whom defense counsel agreed to accept service is excessive; and 3) the undersigned has previously determined that only ten of the depositions are compensable and thus, service fees on nine additional deponents are not recoverable. Cf. Monelus v. Tocodrian, Inc., 609 F. Supp. 2d 1328, 1333 (S.D. Fla. 2009) (awarding fees in the amount of $95 for multiple attempts of service of a motion on a *pro se* party who failed to respond to various matters while acknowledging that private process server fees should not exceed the statutory fees for marshals authorized in 28 U.S.C. § 1921). Pursuant to 28 C.F.R. § 0.114, fees charged by the United States Marshals Service for

---

[12]Most invoices reflect $60.00 fees regardless of the location of the witness. Additionally, many invoices designate "rush immediate basis" or "special process service" without any specific dollar amount or explanation.

personal service of process shall be $45 per hour.  The undersigned finds that the fees

for subpoenas served on defense counsel should be disallowed.

The following costs should not be awarded: service for nine deposition witnesses

($425),[13] service on opposing counsel who accepted service on behalf of various

witnesses or service of various witnesses by single delivery to the defendant's office

($655), and for insufficient documentation for service fees in excess of $45.  Thus, the

undersigned recommends that the plaintiff be awarded $1,035 for expenses associated

with service of the summons on three (3) defendants and subpoenas on ten (10)

deposition and ten (10) trial witnesses (all at $45 each).

2.      Fees for Transcripts

Sub-section 1920(2) provides that " a judge or clerk or any court of the United

States may tax as costs ... [f]ees for printed or electronically recorded transcripts

necessarily obtained for use in the case."   28 U.S.C. § 1920(2).  The plaintiff seeks

reimbursement in the amount of $28,841.14 for fees of the court reporters and

transcripts.  To be recoverable, the plaintiff must show that the deposition transcripts

were necessarily obtained for use in the case.   See EEOC v. W&O, Inc., 213 F. 3d 600,

620 (11th Cir. 2000).  The defendant contends and its expert opines that the plaintiff's

"counsel engaged in unfocused, overbroad, and vastly unnecessary litigation conduct

which did nothing more than extend the litigation unnecessarily and increase the costs."

Resp. at 4 (DE# 164, 4/6/09).  The defendant explains that the plaintiff's counsel

---

[13]The service fees in the amount of $425 for the following nine deposition
witnesses are excluded: H. Goldstein, M. Garcia, S. Kaufman, E. Mattasi, L. Schneider,
M. Burgos-Crong, L. Egozi, B. Clarke, and R. Mendoza.

> spent nearly 200 hours deposing marginal and unnecessary witnesses on matters relating to Defendant's business as a whole, and the individual experiences of other drivers and employees of Defendants.  These depositions often rambled on for full days, mostly due to counsel's inability to ask simple questions and his tendency, as noted by his own expert witness, to veer off into unnecessary areas of questioning.

Id. (citing Cooper Afd. at ¶ 31).    Additionally, the defendant argues that unnecessary duplication occurred as a result of the plaintiff's failure to take the deposition of a designated corporate representative of the defendant.  Id.   The defendant also challenges the fees incurred for expedited transcripts, delivery charges, copies, ASCI discs and mini transcripts.  In their reply, in addition to the arguments they incorporate from the reply in support of their fee application, the plaintiff maintains that "[t]he Court stated that we could take as many depositions as we wanted, the Defendant did not object, and we took them."  Reply at p. 3 (DE# 170, 5/22/09).

Based on a review of the hearing transcript in which discovery was reopened, the undersigned believes that the plaintiff's counsel misconstrued the Court's exasperation with carte blanche to take as many depositions as he wanted.  In taking nineteen depositions, the plaintiff well exceeded the general limit of ten depositions per side. Such inefficiency and excessiveness neither should be condoned nor should be compensated.  The deposition transcript costs and court reporters' per diem fees are recoverable.  See Licausi v. Symantec Corp., 2009 WL 3177566 *3 (S.D. Fla. Sept. 29, 2009) (citation omitted). Regular delivery fees are also recoverable.  However, "... fees for expedited or condensed transcripts, compressed and miniscript versions, and CD ROMs with ASCII are not reimbursable under § 1920."  Id. (citations omitted).

The undersigned finds that the transcripts and court reporter fees for the first ten

depositions were necessarily obtained for use in the case.  Accordingly, the undersigned recommends that certain costs[14] associated with the first ten (10) depositions taken by plaintiff's counsel be reimbursed as follows:

| Date | Deponent | Transcript | Attendance Fee | Deliv. Fee | Total |
|------|----------|-----------|----------------|-----------|-------|
| 4/7/09 | S. Tinkler | | $395.00 (Exhibits $88.00) | $7.50 | $  402.50 |
| 4/8/07 | M. Goetz | $891.00 | $75.00/$180.00 | $7.50 | $1,153.50 |
| 10/31/07-11/8/07 | N. Goodman | $1,426.00 [15] | $75.00 | $7.50 | $1,508.50 |
| 11/7/07 | K. Weller | $  988.90 | $335.00 | $7.50 | $1,331.40 |
| 11/9/07 | J. Boggs | $  985.80 | $380.00 | | $1,365.80 |
| 11/12/07 | R. Sorci | $1,007.50 | $335.00 | | $1,342.50 |
| 11/13/07 | M. Farmer | $   263.50 | $280.00/$75.00 | $7.50 | $  626.00 |
| 4/14/08 | T. Vessechia | $1,141.80 | $335.00 | | $1,476.80 |
| 4/14/08 | J Emmerman | $1,009.80 | | | $1,009.80 |
| 5/7/08 | M. Howard | $  512.00 | | | $  512.00 |
| | Totals: | $8,226.30 | $2,465.00 | $37.50 | $10,728.80 |

The undersigned, therefore, recommends that the claimants be awarded costs for transcripts of depositions, court reporter fees and ordinary delivery charges in the amount of $10,728.80.  The undersigned recommends that the costs associated with the

---

[14]Excluded from the costs in the table are fees for excerpts of transcripts where the full transcript was ordered, mini transcripts, ASCII discs and expedited fees, which are not recoverable.

[15]A full transcript was not ordered, but the mini transcript was.  The amount excludes the charges for an excerpt from the regular transcript ($157.10).

nine excessive depositions be disallowed because the undersigned finds that they were not necessarily obtained for use in the case.

Additionally, the plaintiff seeks reimbursement for transcripts of five hearings (10/31/07, 11/14/07, 4/17/08, 11/13/08, and 12/3/08) in this action and one in a state court action involving the parties (Judge Zack). The defendant challenges all of the transcripts on the ground that they were obtained merely for the convenience of the plaintiff's counsel. The defendant also challenges the state court hearing transcript on the ground that it was unnecessary because the defendant's witnesses who testified in that action were actually deposed in this action and on the ground that the issues in the state court proceeding were not relevant to this action. The undersigned agrees that the state court hearing transcript is not taxable in this action ($856.10).

The plaintiff maintains that the transcripts of the five court hearings in this action were necessarily obtained for use in this action and actually cited and attached as exhibits to the plaintiff's motion for fees. The undersigned finds that the transcripts of the five hearings in this action were not merely for the attorney's convenience and thus are properly taxable. Accordingly, the undersigned recommends that the plaintiff should be awarded the costs in the amount of $297.88 for the five hearing transcripts in this action.

Of the $28,841.14 sought for fees for transcripts, the undersigned recommends that $11,026.68 be awarded.

3.     Fees and Disbursements for Printing and Witnesses

The plaintiff requests $1,850.00 for the costs associated with fees for witnesses. Sub-section 1920(3) states that "[a] judge or clerk of any court of the United States may

43

tax as costs ... [f]ees and disbursements for printing and witnesses."  28 U.S.C. § 1920(3).

The plaintiff seeks $760.00 for fees paid to witnesses for their depositions in both cases (Case Nos. 07-21650 and 08-20128).  The undersigned has previously found that the legal fees incurred for only ten of the nineteen depositions taken by the plaintiff are recoverable.  Thus, the undersigned recommends that the witness fees regarding the same ten witnesses be awarded: 1) S. Tinkler; 2) M. Goetz; 3) N. Goodman; 4) K. Weller; 5) J. Boggs; 6) R. Sorci; 7) M. Farmer; 8) T. Vessechia; 9) J. Emmerman; and 10) M. Howard.  Pursuant to 28 U.S.C. § 1821, witness fees are limited to the amount of $40 per day.  James v. Wash Depot Holdings, Inc., 245 F.R.D. 645, 651 (S.D. Fla. 2007).   Thus, the undersigned recommends that witness fees in the amount of $400 for depositions be taxed against the defendant.

The plaintiff requests $1,090.00 for fees paid to trial witnesses.  The defendant raises similar challenges to the fees for trial witnesses as it did for fees for deposition witnesses.  Additionally, the defendant contends that many of the witnesses fees should be excluded because some of the witnesses would be stricken as cumulative witnesses at trial.  The defendant also challenges the witness fees that exceed the statutory limit of $40 per day without any explanation.  Finally, the defendant complains that many of the trial witness checks were returned to the plaintiff's counsel after the parties reached a settlement.  Reply at p. 12.  Where, as here, the trial did not occur, the plaintiff has the burden to establish that the witnesses would have been reasonably necessary for the conduct of the trial.  See, e.g., George v. GTE Directories Corp., 114 F. Supp. 2d 1281, 1299 (M.D. Fla. 2000) (citation omitted).

44

In his reply, the plaintiff states that he is not seeking fees for the trial witnesses who returned their checks ($585).  (DE# 170-4, Ex. 3, 5/22/09).  In Exhibit 1 to the Reply, the plaintiff provides redacted bank statements that reflect certain cashed checks that were sent to twenty-seven (27) trial witnesses.  (DE# 170-2, Ex. 1, 5/22/09)  The plaintiff has not provided any explanation for the excessive witness fees and has not met his burden to establish that all 27 witnesses would have been reasonably necessary to conduct the trial.  The undersigned finds that the plaintiff should recover $400 for a total of ten (10) trial witnesses.  The plaintiff should receive reimbursement for a total amount of $800 for ten (10) deposition and ten (10) trial witnesses.

4.      Fees for Costs of Making Copies

The plaintiff seeks to recover $4,189.12 for exemplification and copying costs. Sub-section 1920(4) clearly provides for an award of fees for exemplification and copies of papers necessarily obtained for use in the case.  In exercising its broad discretion to determine which photocopy charges to tax and to determine proper value, the Court considers "whether the prevailing party could have reasonably believed that it was necessary to copy the papers at issue."  EEOC v. W&O, Inc., 213 F.3d at 623. Additionally, the burden rests on the prevailing party to demonstrate entitlement to photocopying expenses.  Scelta v. Delicatessen Support Services, Inc., 203 F. Supp. 2d 1328, 1340 (S.D. Fla. 2002) (citing Desisto College, Inc. v. Town of Howey-in-the-Hills, 718 F. Supp. , 910 (M.D. Fla. 1989)).  To meet this burden, the prevailing party must demonstrate that the photocopying costs sought to be recovered were made for purposes of discovery, pleadings, memoranda, or motions.  Fulton Federal Savings & Loan Ass'n v. American Ins. Co., 143 F.R.D. 292, 299 (N.D. Ga. 1991).  Copies made

45

for the general convenience of counsel or copies of documents already possessed by the prevailing party's counsel are not recoverable.  Duckworth v. Whisenant, 97 F.3d 1393, 1399 (11th Cir. 1996).

Without attaching the invoices or delineating with any specificity the purpose of the copying charges for which he seeks costs, the plaintiff requests $4,189.12 in copying costs for 22,048 copies at $0.19 per page.  Instead, the plaintiff's counsel attaches redacted copies of monthly summaries of copy charges for various firm files.  Notably, many of the copy charges for this case well exceed 1,000 pages without any designation of the purpose.  For example, 4,433 copies (Nov. 2007), 3,389 copies (April 2008), 1,510 copies (Nov. 2008), and 5,087 (Dec. 2008).  The defendant objects to the costs, both because they lack information to determine the purpose of the copies and because they object to the $0.19 rate as excessive.

The undersigned RECOMMENDS that the copying costs be reduced by seventy-five percent (75%) for the plaintiff's failure to meet his burden in demonstrating that the copies at issue were necessarily obtained for use in the case and for failure to comply with the Local Rules for the Southern District of Florida.  See Scelta, 203 F. Supp. 2d 1340 (firm billing records designating "copies" without any description of the nature or purpose of the copies is insufficient).  Local Rule 7.3A provides that "[a]ny motion for attorneys fees and/or costs .... (v) shall describe in detail all reimbursable expenses."  Insofar as the plaintiff has not provided any description or documentation that would allow the Court to examine whether and to what extent the copies were necessarily obtained for use in the case, the plaintiff has not "described in detail" whether these copying costs are recoverable and has not met his burden under Section 1920.  The

46

undersigned recognizes that some amount of copies were necessarily obtained for use in the case because the docket reflects over 200 entries and the case involved significant discovery.  The undersigned recommends that the plaintiff be awarded $1,047.28 for copying costs (22,048 x .25 = 5,512 copies at $0.19 per page).

In total, it is recommended that the plaintiff be awarded $700 for filing fees, $1,035 for Marshall's fees, $11,026.68 for transcript costs, $800 for witness fees, and $1,047.28 for copying costs.  The undersigned recommends that the plaintiff be awarded the total amount of $14,608.96 for costs.

### RECOMMENDATION

For all of the foregoing reasons, the undersigned respectfully RECOMMENDS that

1) the Plaintiff's Verified Motion for  Attorneys' Fees and Incorporated Memorandum of Law (DE# 150, 1/28/09) be **GRANTED in part** and that the plaintiff be awarded $86,070.00 in fees plus interest at the legal rate from December 10, 2008;

2) the Plaintiffs' Verified First Supplemental Motion for Attorney's Fees, Costs, and Litigation Expenses, and Incorporated Memorandum of Law (DE# 173, 6/22/09) and the Plaintiffs' Notice of Filing Attorney Fee Hours from June 22, 2009 to the Present (DE# 198, 10/09/09), which was docketed as the second supplemental motion for attorney's fees, be **GRANTED in part** and that the plaintiff be awarded $5,100 in supplemental attorney's fees plus interest at the legal rate from December 10, 2008; and

3) the Plaintiff's Verified Motion to Tax Costs and Incorporated Memorandum of Law (DE# 149, 1/28/09) be **GRANTED in part** and that the plaintiff be awarded

$14,608.96 in costs plus interest at the legal rate from December 10, 2008.

The parties have ten (10) days from the date of receipt of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Donald Graham, United States District Court Judge.   Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein.  See LoConte v. Dugger, 847 F. 2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958, 109 S. Ct. 397 (1988); See also, RTC v. Hallmark Builders, Inc., 996 F. 2d 1144, 1149 (11th Cir. 1993).

RESPECTFULLY SUBMITTED in Chambers, at the United States Courthouse, Miami, Florida this 2nd day of December, 2009.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
United States District Judge Huck
All counsel of record

48